UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DRACUS PERRY                                              CIVIL ACTION

VERSUS                                                    NO. 25-359

INTERNATIONAL PAPER COMPANY, ET AL.                       SECTION "A" (5)

**ORDER AND REASONS**

Before the Court is a **Motion to Dismiss Pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure (Rec. Doc. 7)** filed by Defendants International Paper Company ("International Paper"), Angus MacIntire, Scott Dinkel, and Laura Anderson (the "International Paper Employees") (collectively, the "International Paper Defendants"). Plaintiff Dracus Perry opposes the motion. The motion, set for submission on July 9, 2025, is before the Court on the briefs without oral argument.[1] For the following reasons, the motion is granted.

**I.      Background**

This employment dispute arises out of International Paper's alleged wrongful termination of Dracus Perry.

Mr. Perry began his employment with International Paper in February 2018.[2] He was originally hired as a 12-Boiler Operator and was later promoted to the position of Water Tender Operator SO1.[3] On June 28, 2024, he erroneously documented the results of a Millipore test—his

---

[1] This motion was originally noticed for submission on May 28, 2025. The submission date was *sua sponte* continued to June 18, 2025 by order of Magistrate Judge North. *See* Rec. Doc. 11. Upon receiving notice that one of the parties to this case did not wish to proceed to trial before a Magistrate Judge under 28 U.S.C. § 636(c), the matter was returned to the docket of this Court and the instant motion was reset for submission on July 9, 2025. *See* Rec. Doc. 12; Rec. Doc. 16.

[2] Rec. Doc. 1, Complaint, ¶ 9.

[3] Rec. Doc. 1, ¶ 10.

first time ever making such a mistake.[4] A week later, he was asked to report to Human Resources, where he was questioned by Defendant Angus MacIntire (the Business Unit Manager) and others in the department about the erroneous report.[5] He explained that he mistakenly entered the wrong values for the test result and was subsequently informed that he was suspended pending the company's final employment decision.[6] It is Mr. Perry's belief that "at least five (5) white employees [committed] the same infraction," and that none of the white employees were terminated as a result of their actions.[7]

Mr. Perry's employment was terminated on July 9, 2024.[8] According to his complaint, International Paper fired him for "falsifying documents"—an infraction that warranted immediate termination pursuant to a "new policy change."[9] In accordance with the collective bargaining agreement ("CBA") between International Paper and Mr. Perry's union, a grievance hearing on his termination was scheduled on August 13, 2024.[10] Mr. Perry intended to participate in the hearing, but he alleges that it took place without him after he was provided with the incorrect start time.[11] He was, however, represented at the hearing by his union representative.[12] After the hearing, he was informed by Defendant Laura Anderson, a member of the HR department, that the

---

[4] Rec. Doc. 1, ¶ 11.

[5] Rec. Doc. 1, ¶ 12.

[6] Rec. Doc. 1, ¶ 18, 20.

[7] Rec. Doc. 1, ¶ 11. As it concerns the timeline of this case, the Court notes that it is unclear from the face of the complaint whether this allegation was brought to the attention of International Paper prior to Mr. Perry's termination.

[8] Rec. Doc. 1, ¶ 22.

[9] Rec. Doc. 1, ¶ 22.

[10] Rec. Doc. 1, ¶ 31; *see generally* Rec. Doc. 7-2, Labor Agreement between Bogalusa Mill and Local 13-189 of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (hereafter "CBA").

[11] Rec. Doc. 1, ¶ 32.

[12] Rec. Doc. 1, ¶ 32.

2

basis for his termination was the aforementioned "new policy," which Perry alleges was not formally enacted until after his termination.[13]

The instant lawsuit was filed on February 21, 2025, over seven months after his employment was terminated at International Paper.[14] Through it, Mr. Perry asserts the following seven causes of action, each of which he contends falls under the purview of a Title VII claim:[15] (1) wrongful discharge; (2) intentional infliction of emotional distress; (3) right to be informed; (4) disparate treatment (race discrimination); (5) breach of grievance rights under the CBA; (6) violation of *Weingarten* right; and (7) vicarious liability.[16]

## II. Pending Motion

The present motion organizes Perry's claims into three categories and argues that only the third category, which contains a single claim limited to Defendant International Paper, is not subject to Rule 12 dismissal.[17] The first category comprises all causes of action asserted against the International Paper Employees.[18] The second category comprises the so-called "Labor Claims"—*i.e.*, Counts One, Two, Three, Five, and Six.[19] And the third category comprises Perry's Disparate Treatment claim (Count Four), which Defendants describe as "the 'Title VII Claim.'"[20] The motion explains that International Paper will address the third category's "deficiencies . . . in due course," but does not seek dismissal at the present moment.[21]

---

[13] Rec. Doc. 1, ¶ 34, 36.

[14] Rec. Doc. 1.

[15] As explained *infra*, Perry's contention that each claim asserted falls under the purview of Title VII is erroneous.

[16] *See generally* Rec. Doc. 1.

[17] *See* Rec. Doc. 7-1, at 1.

[18] Rec. Doc. 7-1, at 1.

[19] Rec. Doc. 7-1, at 1.

[20] Rec. Doc. 7-1, at 1.

[21] Rec. Doc. 7-1, at 1.

Defendants argue that the claims in the first category fail substantively, as well as on their face.[22] They fail on their face, according to the motion, because they lack the requisite specificity articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as well as by the Federal Rules of Civil Procedure.[23] The motion further argues that they are substantively deficient because "[i]t is well settled that Title VII does not impose liability on individual employees."[24] In response, Perry concedes that Title VII liability rests with employers, but argues that the International Paper Employees' conduct "rises to the level of intentional infliction of emotional distress under Louisiana law," which he further contends may be imputed on to International Paper by way of vicarious liability.[25]

As it concerns the Labor Claims, the motion posits that they should be dismissed as to all Defendants for three reasons: first, Mr. Perry failed to exhaust the CBA's grievance procedures; second, the International Paper Employees cannot be construed as Mr. Perry's employer for the purpose of the relief he seeks; and third, the law supporting a claim for a violation of *Weingarten* rights does not afford a private right of action.[26] In response, Perry argues that his claims relative to the CBA are not preempted because the process was "deliberately sabotaged" and as such, the equitable tolling doctrine applies;[27] but he does not oppose Defendants' argument as it concerns his *Weingarten* rights claim.[28]

---

[22] *See* Rec. Doc. 7-1, at 13–15.

[23] Rec. Doc. 7-1, at 14.

[24] Rec. Doc. 7-1, at 13 (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 651, 653 (5th Cir. 1994)).

[25] Rec. Doc. 14, at 13–14.

[26] Rec. Doc. 7-1, at 7.

[27] Rec. Doc. 14, at 15–18.

[28] Perry's arguments related to the International Paper employees are summarized in the preceding paragraph.

### III.     Relevant Law

#### a. *Rule 12(b)(6) Standard*

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, district courts employ the two-pronged approach utilized in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A court "can choose to begin by identifying pleadings that, because they are no more than [unsupported] conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint*.*" *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose

5

authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007)).

### b. Collective Bargaining Agreements

Collective bargaining is the negotiation process between an employer and a union to create an agreement that will govern the terms and conditions of the workers' employment. Collective bargaining agreements (and the disputes that arise out of them) are governed by the Labor Management Relations Act of 1947 ("LMRA"). *See generally* 29 U.S.C. § 141.

Section 301 of the LMRA, codified at 29 U.S.C. § 185, has been recognized by the Supreme Court as a "potent source of federal labor law." *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990). It provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). In other words, it provides an individual employee with a federal cause of action against his employer for breach of the collective bargaining agreement between the employer and the employee's union. *See Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 287 (5th Cir. 1988) (citations omitted).

Nested within the LMRA is the National Labor Relations Act of 1935 ("NLRA," codified at 29 U.S.C. § 151, *et seq*.) "which authorizes unions to engage in collective bargaining on behalf of their members [and] imposes a corresponding duty of fair representation upon them." *Jackson v. Teamsters Loc. Union 922*, 991 F. Supp. 2d 71, 83 (D.D.C. 2014) (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). And "[t]hat duty requires each union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith

and honesty, and to avoid arbitrary conduct.'" *Id.* (quoting *Vaca*, 386 U.S. at 177). Accordingly, it is well settled that an employee has an implied right under the statute to assert a cause of action against his union for breach of the duty of fair representation. *Bache*, 840 F.2d at 287.

## IV. Analysis

### a. Perry has failed to state a Title VII claim against the International Paper Employees, and his Emotional Distress claim is insufficient as to all Defendants.

Defendants' motion is granted as to Perry's Title VII claim (Count Four) against the International Paper employees and his Emotional Distress (Count Two) against all Defendants for the following reasons:[29]

***First***, as conceded in his opposition, "Title VII liability rests with employers," not employees.[30] *See also Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 247 (5th Cir. 2017) ("Individuals are not liable under Title VII in either their individual or official capacities.") (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003)). As such, his disparate treatment claim (Count Four) is dismissed as it concerns the International Paper Employees.

***Second***, Perry's claim for intentional infliction of emotional distress (Count Two) is inadequate on its face.[31] The elements of a claim of intentional infliction of emotional distress

---

[29] Mr. Perry's failure to state a claim for emotional distress also forecloses his vicarious liability claim (Count Seven).

[30] *See* Rec. Doc. 14, at 8.

[31] Mr. Perry's tort claims may be preempted by Title VII and/or Section 301 of the Labor Management Relations Act. Regarding Title VII,

> In the non-federal employer context, some courts have recognized that state law claims arising out of the same conduct that constitutes the Title VII violation are preempted by Title VII. *See Goins v. Hitchcock Indep. Sch. Dist.*, 191 F. Supp. 2d 860, 871–72 (S.D. Tex. 2002). Other courts disagree. *See Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 548 (N.D. Tex. 2005). The Court need not weigh in on that dispute, as the plaintiff's failure to identify a cause of action and his failure to brief any cause of action is sufficient to warrant dismissal of the state law claims.

7

were delineated by the Louisiana Supreme Court in *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). To prevail, a plaintiff must prove: 1) that the conduct of the defendant was extreme and outrageous; 2) that the emotional distress of the plaintiff was severe; and 3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *Id.* at 1209. The Louisiana Supreme Court further explained that "Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Id.* at 1210. In light of this, the Court finds that Perry's emotional distress claims are insufficient for at least three reasons: (i) they do not establish repeated harassment over a period of time, *see id.*; (ii) they are conclusory, *see Ashcroft*, 556 U.S. at 678; and (iii) the facts do not otherwise rise to the level of distress that would be required to support such a claim.[32] *See Smith v. Amedisys Inc.*, 298 F.3d 434, 450 (5th Cir. 2002) (affirming dismissal of an emotional distress claim on the basis that the evidence did not show that the distress was "unendurable" where (i) the plaintiff was on the receiving end of sexual and racial

---

*Ekaidi v. Bd. of Supervisors*, No. 16-7523, 2017 WL 699821, at *8 n.8 (E.D. La. Feb. 22, 2017) (Africk, J.). Regarding Section 301,

> A state law claim is completely preempted by section 301 when it is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." Conversely, a state law claim is not preempted where it "do[es] not depend on interpretation of the CBA." Moreover, a claim is "automatically preempted" where the claim is one for breach of a CBA.

*Williams v. AT&T Comm'cns of Tex., LLC*, No. 3:18-CV-3248, 2019 WL 1793012, at *2 (N.D. Tex. April 4, 2019) (citations omitted).

The Court need not weigh in on either of these disputes for two reasons. First, Perry has plainly failed to state a claim for emotional distress. Second, it is unclear to the Court at this stage of the litigation whether Perry's state law claims are substantially dependent upon an analysis of the CBA, and those claims fail for other reasons discussed *infra*.

[32] The Complaint is silent as to which employees are responsible for his alleged emotional distress and does not assert that any employee intended to inflict such emotional distress. *See* Rec. Doc. 1, ¶¶ 41–42. It is likewise insufficiently vague and conclusory as it concerns Defendant International Paper. *See id.*

8

comments she perceived as "repulsive," "horrible," and "very offending," that (ii) caused her to suffer from depression, headaches, and loss of appetite.).

### b. Perry's claims based on violations of the CBA are foreclosed on their face and/or by his failure to comply with dispute resolution procedures set forth in the CBA.

Mr. Perry asserts claims based on alleged violations of the CBA in Counts One (wrongful termination), Three (right to be informed), and Five (breach of grievance rights).

As a threshold matter, the allegations in Count Three are inadequately plead. They state:

> The defendants were being secretive and deceitful when Perry asked what the nature of his meeting and allegations were. Perry was kept in the dark as to the reasons for his termination and was not given the correct time for his grievance hearing. By doing so this act prevented Perry from having a fair disciplinary process so that he could adequately prepare a defense for my allegations.

(Rec. Doc. 1, ¶ 43). These allegations—that "[t]he defendants were being secretive and deceitful" and that "Perry was kept in the dark"—do not survive Defendants' motion to dismiss because they are not "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.

But even if they were adequately plead, they would suffer the same fate as Counts One and Five. Each of these claims are foreclosed based on Perry's failure to comply with the dispute resolution procedures in the CBA.[33] As articulated in Defendants' brief, Supreme Court precedent

---

[33] The CBA was not attached to Perry's complaint, but it is integral to his claims and was attached to International Paper's motion to dismiss. *See, e.g.*, Rec. Doc. 1, ¶ 43 (referencing disciplinary procedures), 45 (referencing grievance rights), 47 – 49 (referencing *Weingarten* rights); *see also Meyers*, 540 F. App'x at 409.

Mr. Perry has not contested the validity of the agreement attached to International Paper's motion, nor its authenticity. But the Court notes, out of an abundance of caution, that the title page of the CBA attached to International Paper's motion lists an effective period of the agreement (2018-2021) that does not include the date of Mr. Perry's grievance (July 9, 2024). Rec. Doc. 7-2, at ECF p. 2. As explained in Section 39, however,

> This Agreement will be in effect from August 1, 2018 to July 3, 2021.

> Either party desiring any change at the expiration of the term of this Agreement shall give to the other party written notice by certified mail sixty (60) days prior to the expiration date hereof, . . . otherwise this Agreement shall remain in force and effect for another year, *and from year to year thereafter*.

9

is clear that "federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). And Fifth Circuit precedent is likewise clear that "federal courts lack subject matter jurisdiction 'to decide cases alleging violations of a collective bargaining agreement . . . by an employee against his employer unless the employee has exhausted contractual procedures for redress.'" *Nat'l Football League Players Ass'n v. Nat'l Football League*, 874 F.3d 222, 226 (5th Cir. 2017) (quoting *Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 402 (5th Cir. 2000)).

Here, Section IV[34] of the CBA outlines the exclusive authority of International Paper to manage the paper mill, Section V sets forth the procedure for resolving disputes between an aggrieved employee and his employer (including the arbitration requirement), and Section VI establishes the arbitration protocol.[35] As explained in Section V, "[s]hould any complaint or dispute arise between . . . the Company and any employee, . . . an earnest effort shall be made to settle such grievance immediately."[36] The settlement process in the CBA comprises three steps:

---

*Id.* § XXXIX (emphasis added).

[34] Section IV expressly notes:

> [T]he Company shall have the exclusive right to manage the mill and direct the working force. Management of the mill and direction of the working force includes the right to . . . demote, discipline, suspend or discharge employees for proper cause; to relieve employees from duty . . . [for] any other legitimate reasons . . . .
>
> [A]ny claim that the Company has exercised these rights contrary to other provisions of this Agreement or in a manner which will result in discrimination or injustice to employees may be submitted as a grievance[.]

Rec. Doc. 7-2, CBA, § IV.

[35] *See* Rec. Doc. 7-2, CBA, §§ IV–VI.

[36] Rec. Doc. 7-2, CBA, § V.

> Step 1. Between the aggrieved employee and or a Union representative and the supervisor. Within three (3) working days after the discussion of such grievance a verbal answer will be given by the supervisor.
>
> Step 2. If the verbal answer to the grievance is not satisfactory, the aggrieved employee may present a written grievance to the department head within three (3) working days of from the date of the supervisor's verbal answer. The department head of a designated representative will meet with the Union grievance committee within five (5) working days after the grievance is referred to Step 2. Within six (6) working days following this meeting the Company's designated representative will give written answer to the Union grievance committee.
>
> Step 3. If no settlement is reached in Step 2, the grievance may be referred by the Union grievance committee within five (5) working days from receiving the Company's designated representative's written answer. The International Union Representative and the Grievance Committee and the Mill's General Manager and/or a designated representative will meet within ten (10) working days after the grievance is referred to Step 3. A written answer to the grievance will be given within ten (10) working days of this meeting. If the grievance has not been resolved, or no request for an extension of the time limits has been made within (10) working days after the date of the answer, either party may recourse to the procedure as set forth in Section VI – ARBITRATION.
>
> If a grievance has not been carried forward to the next higher step within the time limits specified in this Section, it shall be considered to have been settled.
>
> The time limits specified in this Section may be extended by mutual agreement provided such request for extension is made in writing prior to the expiration of the specified time periods.
>
> A grievance which has not ben presented within five (5) working days after cause for it has been known to the aggrieved employee or employees, shall be considered to have been settled.

(Rec. Doc. 7-2, CBA, § V).

It is unclear to the Court whether Mr. Perry exhausted each step of the grievance procedure set forth in Section V of the CBA;[37] it *is* clear, however, that the matter was not arbitrated after the

---

[37] Mr. Perry was given verbal notice of his termination on July 9, 2024. Rec. Doc. 1, ¶ 22. Pursuant to the CBA, this triggered Perry's standing to submit a grievance claim. Rec. Doc. 7-2, § IV. It appears that, rather than proceeding

August 13, 2024 grievance hearing.[38] As such, he failed to exhaust the "contractual procedures for redress" and this Court lacks subject matter jurisdiction over his CBA claims.[39] *Nat'l Football League Players Ass'n*, 874 F.3d at 226.

In opposition to Defendants' motion, Perry argues for the first time that equitable tolling applies to his claim because "Defendants and the Union caused the delay."[40] As it concerns his union, Perry's opposition notes that steps were taken to facilitate an arbitration between the parties but his union representative "ultimately withdrew arbitration after Plaintiff filed an EEOC charge and lawsuit—evidence of retaliatory intent."[41] The veracity of this allegation and the merits of his equitable tolling argument ultimately have no bearing on the Court's decision because the quality of his union representation is not at issue in this case. *See Miranda v. Nat'l Postal Mail*, 219 F. App'x 340, 345 (5th Cir. 2007) (explaining that a claim such as the one Perry makes against his union for the first time here, is "properly characterized as a duty of fair representation claim, as he is [claiming] his union [failed] to represent him faithfully in its dealings with [International Paper]").[42]

---

through the steps outlined above, a grievance hearing was scheduled on August 13, 2024. Rec. Doc. 1, ¶ 31. After the grievance hearing, Mr. Perry sought relief by filing a Charge of Discrimination with the Equal Employment Opportunity Commission and, subsequently, the instant lawsuit. Rec. Doc. 14, at 18.

[38] Rec. Doc. 7-2, § V.

[39] The Court also notes that Perry's claims might also be foreclosed on the basis that, under the CBA, they are deemed settled. *See* Rec. Doc. 7-2, § V ("If a grievance has not been carried forward to the next higher step . . . it shall be considered to have settled.").

[40] Rec. Doc. 14, at 17.

[41] Rec. Doc. 14, at 18.

[42] Reading Perry's complaint together with his opposition establishes that this matter is best characterized as a "hybrid" Section 301 lawsuit. The Supreme Court has defined such a lawsuit as follows:

> [H]ybrid suits formally comprise two causes of action. First, the employee alleges that the employer violated [section 301] by breaching the collective-bargaining agreement. Second, the employee claims that the union breached its duty of fair representation, which the Court has implied from the scheme of the NLRA, by mishandling the ensuing grievance-and-arbitration proceedings.

*Reed v. United Transp. Union*, 488 U.S. 319, 328 (1989).

12

As such, Perry's CBA claims, including his newly urged argument in support of equitable tolling, fail for three reasons. First (and foremost), "the arbitration-and-grievance proceeding is the exclusive remedy for breach of the CBA," and an arbitration never occurred.[43] *Id.* Second, Perry did not plead a fair representation claim (*i.e.*, the "indispensable predicate" to a lawsuit such as this, *Daigle*, 794 F.2d at 977) against his union in this lawsuit, nor has he done so in a separate lawsuit. And third, any effort to assert such a claim would now be futile as that recourse is time-barred under the CBA and Perry has not otherwise demonstrated good cause.[44] *See Miranda*, 219 F. App'x at 345 (explaining that there is a 6-month statute of limitations on a "hybrid § 301/fair representation claim" imposed by 29 U.S.C. § 160(b) and that the same limitations period applies

---

This case only concerns the first cause of action noted above, but the absence of an allegation against the union in the complaint is not always improper. *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164 (1983) (noting that the two claims are "inextricably interdependent"). As the Fifth Circuit explained in *Daigle v. Gulf States Utilities Company, Local Union Number 2286*,

> The interdependency arises from the nature of the collective bargaining agreement. If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure. Further, he is bound by the procedure's result unless he proves the union breached its duty of fair representation. Thus, the "indispensable predicate" for a § 301 action in this situation is a fair representation claim against the union.

794 F.2d 974, 977 (5th Cir. 1986), *cert. denied*, 479 U.S. 1008 (1986) (citations omitted). In other words, Perry was theoretically entitled to sue International Paper separate from his union under this framework because "the case to be proved is the same whether one or both are sued." *Thomas v. LTV Corp.*, 39 F.3d 611, 621 (5th Cir. 1994). But his claims are nonetheless foreclosed by his failure to exhaust the CBA's dispute resolution procedure.

[43] *See* Rec. Doc. 7-2, § V ("If the grievance has not been resolved . . . either party may have recourse to the procedure as set forth in Section VI – ARBITRATION.").

[44] "Equitable tolling is most commonly merited where the plaintiff has been misled about her rights or has been prevented in some extraordinary way from exercising those rights." *O'Hara v. Donahoe*, 595 F. App'x 367, 371 (5th Cir. 2014) (citing *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)). Mr. Perry alleges in his response that (i) International Paper failed to provide him with certain documents after his termination, and (ii) his union representatives gave him "conflicting and unclear responses and ultimately withdrew arbitration after [he] filed an EEOC charge and lawsuit," but he does not explain why this prevented him from exhausting the procedures set forth in the CBA within 6 months of his termination. *See* Rec. Doc. 14, at 17–18. Nor does it explain his failure to assert a claim against his union representative. This is bolstered by the fact that there is no evidence that Perry made a good faith attempt to revive the arbitration after learning that it was allegedly withdrawn due to his EEOC charge and this lawsuit. *See Lee v. Cytec Indus., Inc.*, 460 F.3d 673, 676 (5th Cir. 2006).

13

even if the duty of fair representation claim is brought independent of the Section 301 claim). Accordingly, his CBA claims are dismissed.

### c. *This Court lacks jurisdiction to preside over Perry's Weingarten claim.*

Citing to the Supreme Court's decision in *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975), Perry asserts in Count Six that International Paper violated the NLRA when it "proceed[ed] with an investigatory interview and disallowed Perry the option of choosing his own Union representative."[45] Through its motion, International Paper contends that Perry's *Weingarten* claim fails as a matter of law because (i) private rights of action are not afforded in the context of a *Weingarten* claim, and (ii) jurisdiction over such a claim is vested exclusively in the National Labor Relations Board ("NLRB").[46] The Court agrees that it lacks jurisdiction over International Paper's *Weingarten* claim, so it need not address the private right of action argument.

In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 242–45 (1959), the Supreme Court considered whether the NLRB possessed exclusive jurisdiction to consider claims against an employer based upon sections seven and eight of the NLRA. The Court explained that "[w]hen an activity is arguably subject to [section] 7 or [section] 8 of the Act, the States *as well as the federal courts* must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.* at 245 (emphasis added). As noted in International Paper's brief, the issue before the *Garmon* Court is distinct from the present issue as it concerned whether a state court possessed jurisdiction to award damages

---

[45] Rec. Doc. 1, ¶ 49. In *Weingarten*, the Court affirmed the NLRB's conclusion that it would be a "serious violation of the employee's individual right to engage in concerted activity by seeking the assistance of his statutory representative if the employer denies the employee's request and compels the employee to appear unassisted at an interview which may put his job security in jeopardy." 420 U.S. at 257. In other words, an employee's *Weingarten* right is infringed when an employer compels him to appear at an interview that may put his job security in jeopardy but denies him union representation.

[46] Rec. Doc. 7-1, at 12.

under the NLRA; not whether a federal district court must yield jurisdiction to the NLRB when faced with "an activity [that] is arguably subject to [section] 7 or [section] 8." *Id.*[47]

The present issue was more clearly addressed, however, in *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33 (1998). There, the Supreme Court considered whether a federal district court (as opposed to a state court like in *Garmon*) may exercise jurisdiction over an action subject to section 7 or 8 of the NLRA, and determined that, unless the action is one for breach of the duty of fair representation, the district court was devoid of jurisdiction.[48] *Id.* at 49 ("When a plaintiff challenges an action that is 'arguably subject to § 7 or § 8 of the [NLRA],' this challenge is within the primary jurisdiction of the NLRB.") (quoting *Garmon*, 359 U.S. at 245)). The Court further explained that "[t]hese claims are within the primary jurisdiction of the NLRB in part to promote the uniform interpretation of the NLRA." *Id.*

Perry's *Weingarten* claim is expressly premised on "the rights protected by Section 7 [of the NLRA],"[49] and his complaint does not assert a breach of the duty of fair representation against his union.[50] As such, his *Weingarten* claim is dismissed.

Accordingly;

**IT IS ORDERED** that Defendants' **Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rec. Doc. 7)** is **GRANTED**. The following claims are **DISMISSED WITH PREJUDICE** as to all defendants: Wrongful Termination (Count 1); Intentional Infliction of Emotional Distress (Count 2); Violation of the Right to be Informed

---

[47] *See* Rec. Doc. 7-1, at 12 n.9.

[48] *See Marquez*, 525 U.S. at 49 ("But when a plaintiff alleges a breach of the duty of fair representation, this claim is cognizable in the first instance in federal court.") (citing *Vaca*, 386 U.S. at 177–83)).

[49] Rec. Doc. 1, ¶ 47.

[50] Nor could he seek leave to assert such a claim, as that recourse is time-barred.

(Count 3); Breach of Grievance Rights (Count 5); Breach of *Weingarten* Rights (Count 6); and Respondeat Superior and Vicarious Liability (Count 7).

**IT IS FURTHER ORDERED** that Plaintiff's Disparate Treatment claim (Count 4) is **DISMISSED WITH PREJUDICE** as to Defendants Scott Dinkel, Angus MacIntire, and Laura Anderson. The only claim that remains active in this lawsuit is Plaintiff's Disparate Treatment claim (Count 4) asserted against Defendant International Paper.

July 16, 2025

                                                                         JAY C. ZAINEY
                                                          UNITED STATES DISTRICT JUDGE